# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JAN 17 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA : Criminal No. 05-259

v. :

MAHMUD RASHID, : VIOLATION: 18 U.S.C. § 1343
: (Wire Fraud)
Defendant. :

## STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, MAHMUD RASHID, agrees and stipulates to the following facts in connection with his plea of guilty to 18 U.S.C. § 1343 (wire fraud).

The defendant, MAHMUD RASHID, owned and operated an Exxon franchise at 950 South Capitol Street, S.E. Washington, D.C. 20003 from on or about February 1, 2001 until present. Defendant RASHID's responsibilities as owner/operator of this station included marketing and maintaining profitability, merchandising and ordering supplies, hiring and supervising employees, maintaining and generating daily sales reports, operating the computer point of sale system (cash register) and interacting with the customers. RASHID's station is located among several government buildings and, as a result, is a popular location for government employees to refuel their government vehicles.

Among the government employees that use RASHID's station are those of the D.C. Water and Sewer Authority ("DCWASA"), and the DC Public Works ("DCPW"). Both of these government agencies utilizes the Voyager Fleet Card program. The Voyager Fleet Card program is a fuel and maintenance credit card system for large organizations with hundreds of vehicles.

The system provides a single commercial account with cards issued to either a driver or a vehicle. Card restrictions vary from agency to agency and are designed to enhance security and thereby prevent fraud. For example, many agencies require drivers to input a pin number as an authorization and control mechanism.

Fuel transactions at RASHID's station could be processed from outside at the pump or from inside the station at the register. In either instance, a computer point-of-sale terminal was utilized to transmit electronically the dollar amount of the transaction and the card holder's account information. At the conclusion of the transaction, the equipment at the pump registers the dollar amount and transmits debit instructions to the credit card processing service, General Electric, in the State of Utah. For purchases completed at the register, however, the station attendant must input the transaction's dollar amount, at which point that amount is transmitted to General Electric in Utah for processing.

Beginning in early 2001 and lasting until approximately February, 2004, RASHID began double-billing certain government agencies that utilized the Voyager Fleet Card program. Government customers would provide their Voyager Card to RASHID to initiate the transaction and would return to the pump. At that time, RASHID would swipe the Voyager Credit Card once through the computer point-of-sale terminal and he would then enter an arbitrary dollar amount while the customer was outside. As a result of this swipe, the computer generated a sales receipt that was never produced to the customer. Upon the customers' return after the completion of the gas transaction, RASHID would swipe the Voyager Credit Card a second time and enter the actual amount for the fuel transaction. This would generate a second sales receipt which RASHID produced to the customer for his or her signature. RASHID would transmit the

2

two transactions within minutes of one another. Therefore, RASHID would cause to be transmitted by interstate commerce by means of a wire communication, certain writings, signals, pictures, and sounds; that is RASHID used a point-of-sale terminal in his business to debit the Voyager Credit Card account of these government agencies, without permission, and to credit a bank account controlled by RASHID.

The Voyager Credit Card's anti-fraud procedures required its customers to utilize pin numbers. Therefore, to process these Voyager transactions, RASHID's computer system prompted him for additional information. First he was required to enter a pin number, then the vehicle's odometer reading, and, finally, the dollar amount. The Voyager Cards utilized by DC WASA and DC Public Works had pin numbers that were not imprinted on the face of the cards. Thus, in furtherance of his scheme, RASHID misappropriated a customer's pin number – PIN Number 5698 – to bypass the authorization procedures in place for these Voyager Credit Cards. When presented with a DC WASA or DC Public Works Credit Card, RASHID would use the Pin Number 5698 to input the illegitimate purchase. When processing the second legitimate fuel transaction, however, RASHID would have the customer input his own pin number once he re-entered the gas station to sign the credit card receipt. As a result, the 5698 pin number appears on approximately 1,789 occasions.

Following an audit of these government accounts, officials detected the double-billing scheme and sent several different officers to the RASHID gas station to make undercover fuel purchases. On at least fourteen occasions, agents entered the station while RASHID was working and made a legitimate purchase of fuel. On every occasion these agents were billed for two transactions within minutes of each other. One receipt was generated by the system which

3

would reflect an arbitrary amount. That receipt was unsigned and never seen by the undercover agent. A second receipt was generated which reflected the actual purchase price and was signed by the undercover agent. On approximately three additional occasions, the undercover agents entered the gas station when RASHID was not working and on those occasions the agents were billed for only one fuel transaction, which was a legitimate purchase.

On Thursday, February 12, 2004, a search warrant was executed at RASHID's station. Law enforcement officers found, among other things, both the signed and unsigned receipts from dozens of double-billed, government-issued Voyager Credit Cards. The daily sales records were also recovered which documented the double-billed transactions as recorded through RASHID's computer point-of-sales system. In addition, a handwritten sign was recovered which stated "[d]ue to our new system we may need to call for authorization, please put your pin and mileage on the receipt."

As a result of this ongoing pattern of conduct by RASHID, DC WASA and DC Public Works sustained a collective loss (double-billing) which exceeds $120,000.00.

4

Date: 1/17/06

_____
MAHMUD RASHID
Defendant

I have read each of the four pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 1/17/06

_____
MICHELLE M. PETERSON
Attorney for the Defendant

5