**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
RISING MICRO, L.L.C.,           )
                                )
        Plaintiff,              )
                                )
    v.                          )    Civil Action No. 06-572 (GK)
                                )
EXXON MOBIL OIL CORPORATION,    )
                                )
        Defendant.              )
_____)
```

<u>Memorandum Opinion</u>

Plaintiff, Rising Micro, L.L.C. ("Rising Micro"), brings this action against Exxon Mobil Oil Corporation ("Exxon Mobil"), alleging improper termination of its retail motor fuel franchise agreement in violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801 <u>et</u> <u>seq.</u>

This matter is currently before the Court on Plaintiff's Motion for Preliminary Injunction [Dkt. No. 3]. Upon consideration of the Motion and Opposition,[1] the representations of the parties at a Hearing held on May 1, 2006, and the entire record herein, and for the reasons stated below, Plaintiff's Motion is hereby **denied.**

I.    **BACKGROUND**

A.    **Facts**[2]

Rising Micro is a Virginia Limited Liability Company owned

---

[1]  Plaintiff did not file a Reply.

[2]  Unless otherwise specified, the Court cites only facts that are undisputed by the parties.

entirely by Mahmoud Rashid, who also serves as its President.  In February 2001, Plaintiff purchased the business of a retail gas station known as Capitol Exxon, located at 950 South Capitol Street, SE, in Washington, DC.  At the same time, Rising Micro entered into a standard three-year franchise agreement with Exxon Mobil for the lease of "Marketing Premises" and exclusive rights to purchase and resell fuel under the Exxon trademark.  In October 2003, prior to the expiration of the original agreement, Rising Micro and Exxon Mobil entered into a second three-year franchise agreement, which became operative in February 2004 and is set to expire in February 2007.  Rashid executed both agreements on behalf of Rising Micro and is designated in them as the "Key Individual" responsible for day-to-day operations of the station.  See Bednash Decl., Ex. 1, 2004-2007 Franchise Agreement.

On July 11, 2005, the U.S. Attorney for the District of Columbia filed an Information in this Court, alleging that Mahmoud Rashid had engaged in widespread credit card fraud at the station, in violation of 18 U.S.C. § 1343.  See United States v. Rashid, No. 05-cr-259, Information (D.D.C. July 11, 2005).  Rashid plead guilty on January 17, 2006 and is currently awaiting sentencing, which is now scheduled for June 2, 2006.

According to the factual proffer accompanying the guilty plea, on numerous occasions between 2001 and 2004, Rashid double-billed District of Columbia credit cards used by municipal employees from

the Water and Sewer Authority and Department of Public Works to refuel fleet vehicles. Specifically, when employees brought such vehicles to the station, Rashid would take the credit cards they supplied and, while the employees were outside at the pump and apparently without their knowledge, would initiate a dummy transaction for an arbitrary dollar amount.[3] After the employee returned to the cashier's stand, Rashid would then initiate another transaction for the actual amount of gas sold. Accordingly, for each refuel by a District employee, there would be two transactions charged to the credit card—one legitimate and one fraudulent. Using this technique, Rashid stole more than $120,000 from the District. See United States v. Rashid, No. 05-cr-259, Statement of the Offense (D.D.C. January 17, 2006).

By letter dated March 14, 2006, Exxon Mobil notified Rising Micro that its franchise would be terminated effective March 29, 2006. See Bednash Decl., Ex. 4. As grounds for the termination, Exxon Mobil cites Article XIV of the franchise agreement, which authorizes termination for any violation of the PMPA. Id. Because of Rashid's guilty plea, Exxon Mobil claims in the letter that termination is proper under Sections 2802(b)(2)(C), (c)(1), and

---

[3] A PIN is required to complete any transaction using a D.C. credit card. The factual proffer does not indicate how Rashid obtained PINs from the District employees who refueled at his station. Defendant, however, points out that during a February 12, 2004 search of the station, detectives seized a sign that said "Due to our new system, we may need to call for authorization. Please put your PIN and mileage on your receipt." Opp'n at 6.

(c)(12) of the PMPA.[4]  <u>Id.</u>  Although the letter is addressed to Rising Micro, its salutation reads "Dear Mr. Rashid."  <u>Id.</u>

### B.  Procedural History

Plaintiff filed its Complaint, along with a Motion for Temporary Restraining Order and Preliminary Injunction, on March 28, 2006.  The parties later agreed to extend the franchise until the instant Motion for Preliminary Injunction is resolved, thus mooting Plaintiff's Motion for Temporary Restraining Order.  <u>See</u> Opp'n at 1, n.1.  Defendant opposed Plaintiff's Motion on April 21, 2006.  Plaintiff did not file a Reply before the Court-ordered deadline of April 25, 2006.  On May 1, 2006, the Court heard oral arguments on Plaintiff's Motion for Preliminary Injunction.

## II.  STANDARD OF REVIEW

Enacted in 1978, the PMPA regulates the termination and non-renewal of retail fuel franchises.  According to its legislative history, it was intended to mitigate the "disparity of bargaining power" between franchisors and franchisees by protecting the latter from arbitrary or discriminatory terminations or non-renewals.  <u>See</u> S. Rep. No. 731, 95th Cong., 2d Sess. (1978) at 15; <u>see also</u> <u>Pro</u>

---

[4]  As discussed in detail <u>infra</u>, PMPA § 2802(b)(2)(C) permits a franchisor to terminate a franchise because of "the occurrence of an event which is relevant to the franchise relationship and as a result of which termination . . . is reasonable."  <u>See</u> PMPA § 2802(b)(2)(C).  Sections 2802(c)(1) and (c)(12) describe two circumstances in which termination is proper under Section 2802(b)(2)(C).  <u>See</u> PMPA § 2802(c).

Sales, Inc. v. Texaco, U.S.A., Div. of Texaco, Inc., 792 F.2d 1394
(9th Cir. 1986).  It does so by "limiting the grounds on which
distributors may terminate or fail to renew a franchise" and by
creating an exclusive cause of action for aggrieved franchisees to
challenge such actions.  See Glenside West Corp. v. Exxon Co., 761
F. Supp. 1118, 1128 (D. N.J. 1991).

In any civil action for improper termination, the Act places
the burden on the franchisor to show, first, that proper
notification requirements were followed; and, second, that "such
termination is based upon a ground described in paragraph 2" of
Section 2802.  See PMPA §§ 2802(b)(1)(A)-(B).

The Act authorizes courts, where appropriate, to issue a
preliminary injunction in order to preserve the franchise
relationship while a termination dispute is litigated.  It sets
forth a standard for preliminary injunctive relief that is somewhat
more liberal than the standard contained in Federal Rule 65.  Under
the Act, a preliminary injunction should issue if the franchisee
shows that: (1) the franchise of which he is a party has been
terminated; (2) there "exist serious questions going to the merits
to make such question a fair ground for litigation;" and (3) the
hardship a preliminary injunction would place on the franchisor
"will be less than the hardship which would be imposed upon such
franchisee if such preliminary injunctive relief were not granted."
See 15 U.S.C. § 2805(b)(1)-(2).

The Act does not define what constitutes a "serious question . . . that . . . is a fair ground for litigation." Courts generally interpret it as requiring a plaintiff to show that it has "a reasonable chance of success" on the merits but "something far less than . . . 'probability or likelihood.'" Saad v. Shell Oil Co., 460 F. Supp. 114 (E.D. Mich. 1978); see also Nassau Boulevard Shell Service Station, Inc. v. Shell Oil Co., 875 F.2d 359, 363 (2d. Cir. 1989); Moody v. Amoco Oil Co., 734 F.2d 1200, 1217 (7th Cir. 1984); Khorenian v. Union Oil Co. of California, 761 F.2d 533 (9th Cir. 1985).

There is no dispute that Plaintiff's franchise has been terminated. Accordingly, the resolution of the current Motion turns on whether Rising Micro has established the following: first, that it has a reasonable chance of success on its claims that termination was procedurally and substantively improper in this case; and, second, that the balance of hardships favors the entry of preliminary injunctive relief.

## III. ANALYSIS

### A.    Plaintiff Has Not Demonstrated Any Serious Question on the Merits that Presents a Fair Ground for Litigation

According to Plaintiff, a preliminary injunction should issue so that four serious questions can be litigated on the merits: (1) whether Exxon satisfied the PMPA's notification requirements; (2) whether Rashid's criminal activity constitutes an "event relevant to the franchise relationship" sufficient to allow Defendant to

terminate the franchise under PMPA § 2802(b)(2)(C); (3) whether Exxon is equitably estopped from terminating Plaintiff's franchise; and (4) whether Exxon Mobil's stated reasons for terminating the franchise are pretextual?

### 1.  Exxon Mobil has satisfied the PMPA's notice requirements

In order to prevail on the merits, a franchisor must first demonstrate that in terminating a franchise, it followed the notification requirements set forth in the PMPA.  See PMPA § 2802(b)(1)(A).  Rising Micro challenges the notification provided in this case on two grounds: first, it argues that Exxon Mobil did not give timely notice of its intention to terminate; and, second, it contends that even if notice was timely given, there is a fact question as to whether it was reasonable to terminate the franchise only fifteen days after the notice was given.  See Pl.'s Mot. for Prelim. Inj. (hereinafter "P.I. Mot.") at 14, 17–18.

The PMPA generally requires franchisors to give ninety days notice of termination.  See PMPA § 2804(a)(2).  Shorter notice is permitted, however, where it would not be reasonable for a franchisor to provide ninety days, provided that the franchisor gives notice on the earliest practicable date.  See PMPA § 2804(b)(1)(A).  Where, as here, the franchisor relies on PMPA § 2802(b)(2)(C) as grounds for termination, it may not give less than ninety days notice unless it informs the franchisee of its decision within sixty days of acquiring actual or constructive knowledge of

the "event . . . relevant to the franchise relationship" on which it based that decision. See PMPA § 2802(b)(2)(C)(ii).

Exxon Mobil notified Rising Micro of its intention to terminate on March 14, 2006 and the termination was to be effective as of March 29, 2006, fifteen days later. See Bednash Decl. ¶ 7. Plaintiff alleges that such notice was improper because Exxon Mobil acquired knowledge of the investigation involving Rashid no later than February 12, 2004, when authorities searched the station and seized evidence from it.[5] See P.I. Mot. at 14. As a result, if Rashid's criminal activity was indeed the grounds for terminating the franchise, Plaintiff contends that Exxon Mobil had known about it for more than two years. Because more than sixty days had elapsed since Exxon Mobil learned of Rashid's activity, Plaintiff concludes, that activity cannot be grounds for giving less than ninety days notice of termination pursuant to PMPA § 2802(b)(2)(C)(ii). Id.

Under Plaintiff's reasoning, the sixty-day tolling period set forth in Section 2802(b)(2)(C)(ii) began to run when Exxon Mobil

---

[5]    Rising Micro claims that there was an Exxon Mobil representative at the station during the search, but provides no evidence in support of that allegation. Although Exxon Mobil does not explicitly deny that a company representative was present, it represents that it has no knowledge of any such representative being there or who that individual could have been. Moreover, it argues that because Rising Micro has not identified the company representative who allegedly witnessed the search, or submitted any declarations or affidavits in support of its allegation, it has not met its burden of proving that Exxon Mobil in fact knew that a search had taken place. See Opp'n at 16.

became "aware of the accusation of fraud or criminal misconduct by Mahmoud Rashid," which, it argues, occurred no later than February 12, 2004.  See P.I. Mot. at 14.  Rising Micro offers no authority for the proposition that mere awareness of potential criminal misconduct triggers the tolling period.  But even if the Court were to assume that Exxon Mobil learned of the investigation into Rashid's conduct as early as Plaintiff claims, a fact that Exxon Mobil vigorously disputes, it would frustrate the purposes of the PMPA to start the sixty-day tolling period as early as Plaintiff suggests.

Considering this precise issue in a case that presented similar facts to these, the Second Circuit held that the sixty-day notice period in PMPA § 2802(b)(2)(C) did not begin to toll when the franchisor heard that the franchisee had been arrested on charges of credit card fraud, but only when the franchisee admitted the truth of those charges to a company representative.  See Nassau Boulevard, 875 F.2d at 362-63.  Even though the statute contemplates "constructive" knowledge as a trigger for the tolling period, the court explained that the PMPA's overriding purpose is to protect franchisees from arbitrary terminations.  A finding that the tolling period begins when the franchisor develops "mere suspicions" about wrongdoing on the part of a franchisee, it reasoned, would be "at odds with the congressional intent" because it would encourage franchisors to begin the termination process at

the slightest hint of wrongdoing.  Id.

The court further explained that

[a]s the [tolling period] was enacted to protect
franchisees, it would be ironic if section 2802 subjected
franchisees to unfair terminations.  Yet, under
plaintiff's construction, franchisors would be forced to
terminate [upon] hearing a rumor about a franchisee. . .
We believe that Shell took the proper course by trying to
confirm its suspicions before effecting a termination.

Id. at 362.  On that basis, it held that the tolling period began

when the franchisor learned definitively that the franchisee was

guilty, rather than when it first may have heard that he was being

investigated.  Id.

Applying the highly persuasive reasoning of Nassau Boulevard

to the instant facts suggests that the sixty-day tolling period in

this case began on January 17, 2006, when Rashid entered his guilty

plea, rather than on the unspecified, and contested, date when

Exxon Mobil first learned he was being investigated.  Accordingly,

because the March 14, 2006 letter came fifty-six days after the

entry of Rashid's plea, the Court finds that notice was proper

under PMPA § 2802(b)(2)(C)(ii).  A holding to the contrary would

place franchisors in the position of having to terminate

franchisees based on the barest suspicion of wrongdoing or risk

forfeiting their right to give less than ninety days notice.  Such

a result would be contrary to both the spirit and the letter of the

PMPA.

The Court also rejects Rising Micro's broader argument that,

on these facts, ninety days notice is unreasonable as a matter of law. <u>See</u> P.I. Mot. at 17-18. Although Plaintiff cites two cases for the proposition that, generally, whether an act is "reasonable" under the PMPA is a question of fact, it cites no authority for its argument that less than ninety days notice is <u>per se</u> unreasonable. <u>See</u> <u>id.</u> (citing <u>Roberts v. Amoco Oil Co.</u>, 740 F.2d 602 (8th Cir. 1984) and <u>Doebereiner v. Shio Oil Co.</u>, 893 F.2d 1275 (11th Cir. 1990)).

On the other hand, Exxon Mobil cites a string of cases in which courts upheld notice of less than ninety days where franchisees committed similar, or even less serious, crimes. <u>See</u> Opp'n at 18. The Court finds all of these cases persuasive. <u>See</u>,<u>e.g.</u>, <u>Wisser v. Mobil Oil Corp.</u>, 730 F.2d 54, 60 (2d Cir. 1984) (noting that immediate termination was reasonable where franchisee sold misbranded gasoline because such activity was "a serious violation of [the franchise agreement] and it was perpetrating a fraud on the public"); <u>Glenside West</u>, 761 F. Supp. at 1131 (concluding that immediate termination was reasonable where franchisee was convicted of assault and had made threats against franchisor's property); <u>Alexander v. Exxon Co., U.S.A.</u>, 949 F. Supp. 1248, 1253 (M.D.N.C. 1996) (collecting authority in support of its holding that thirty-nine days notice was reasonable where franchisee plead guilty to possession of cocaine).

There can be no serious question that less than ninety days

notice was reasonable in this case as well.  Rashid plead guilty to a serious felony in which he used the instruments of Plaintiff's franchise to defraud the District of Columbia government and taxpayers out of a substantial sum of money.  It is not unreasonable for a franchisor to conclude that it should prevent such an individual from operating under its aegis, and benefitting from its name, reputation, logo, and trademark, as soon as possible.  Furthermore, as the case has developed, Plaintiff has in fact received no fewer than fifty-three days notice that the franchise would be terminated.  Accordingly, Plaintiff cannot prevail on its argument that Exxon Mobil violated the PMPA's notice requirements, and has raised no serious question which would be a "fair ground for litigation."

### 2.    The termination of Rising Micro's franchise was valid under PMPA § 2802(b)(2)(C)

In its March 14, 2006 letter, Exxon Mobil cites as grounds for termination Sections 2802(b)(2)(C), (c)(1), and (c)(12) of the PMPA.  See Bednash Decl., Ex. 4.  Plaintiff argues that there are serious questions regarding the propriety of termination under each of these provisions.  See P.I. Mot. at 10-14.

PMPA § 3802(b)(2)(C) authorizes termination or non-renewal in cases where there has been "the occurrence of an event which is relevant to the franchise relationship and as a result of which [termination or non-renewal] is reasonable."  Section 3802(c)

-12-

specifies certain "events" warranting termination or non-renewal under Section 3802(b)(2)(C). These include "fraud or criminal misconduct by the franchisee relevant to the operation of the marketing premises," PMPA § 2802(c)(1), and "the conviction of the franchisee of any crime involving moral turpitude." PMPA § 3802(12).

Because Rashid engaged in fraud or criminal misconduct relevant to the operation of the franchise and was convicted of a crime of moral turpitude, Exxon Mobil contends that termination was proper under either Section 2802(c)(1) or Section 2802(c)(12). See Opp'n at 13-15.

According to Plaintiff, however, neither provision applies in this case. First, because Rising Micro, and not Mahmoud Rashid, is the franchisee, Exxon Mobil cannot establish either that there has been "fraud or criminal misconduct by the franchisee relevant to the operation of the marketing premises" or that the franchisee has been convicted of a crime involving moral turpitude. See P.I. Mot. at 10-13 (emphasis added). Second, even if Rashid's guilty plea is relevant, Plaintiff contends that there is still a question as to whether a plea constitutes "conviction" of a crime involving moral turpitude for purposes of Section 2802(c)(12).[6] See id. at 11-12

_____

[6] As the Court explained on the record during the May 1, 2006 Hearing, Plaintiff is correct that under Federal Rule of Criminal Procedure 32(k), and the well-developed case law on the issue, Rashid's guilty plea is not equivalent to a conviction. Accordingly, Exxon Mobil cannot succeed on its argument that

(emphasis added).

> **a.   Rashid's activities constituted "fraud or criminal misconduct relevant to the operation of the marketing premises"**

It is undisputed that even though Rashid is the "Key Individual" identified in the franchise agreement, and the sole owner and operator of the station, he executed that agreement in the name of Rising Micro. Whether Exxon Mobil properly relied on PMPA § 2802(c)(1) to terminate Rising Micro's franchise thus turns on whether criminal conduct by a franchisee's sole shareholder and President, rather than the named franchisee itself, is grounds for termination. The weight of authority suggests that it is.

In a case with facts that are similar to, if ultimately distinguishable from, these, the Ninth Circuit held that a sole shareholder's criminal activity could be grounds for terminating a franchise that he had assigned to the corporation he owned and controlled. See Atlantic Richfield Corp. v. Guerami, 820 F.2d 280 (9th Cir. 1987). There, Atlantic Richfield Corporation ("Arco") signed a franchise agreement with the defendant, Guerami, in his individual capacity. Guerami later assigned that franchise to a company he controlled—Apadona Corporation. When Guerami was

───────────────

termination was proper under PMPA § 2802(c)(12) and the Court will not address this issue further. Nevertheless, because termination was proper on other grounds, the likelihood that Plaintiff will succeed on its argument under Section 2802(c)(12) is not sufficient to warrant preliminary injunctive relief.

convicted of selling heroin, Arco terminated the franchise, citing PMPA § 2802(b)(2)(C).  See id. at 282.  Plaintiff argued that because the franchise had been assigned to Apadona, it was the franchisee for PMPA purposes and thus Guarami's criminal conviction was irrelevant.  See id.  The court, however, found that because Guerami had signed the franchise in his individual capacity, and was the sole individual bound by that agreement, he remained the franchisee for purposes of the PMPA.

In language that is persuasive on these facts, the court explained that "even if Apadona was the nominal 'franchisee,'" the termination would still have been proper.  Citing an earlier Ninth Circuit case, Humboldt Oil v. Exxon Mobil Co., U.S.A., the court explained that "good faith belief of the franchisor that the franchisee is untrustworthy or engages in fraudulent practices undermines the entire franchise relationship" and, as in this case, because Defendant "had no recourse against any individual other than Guerami if problems developed with Apadona," his conviction "undermined the franchise relationship regardless of whether he or Apadona was the nominal 'franchisee.'"[7] Id. (citing Humboldt Oil v. Exxon Mobil Co., U.S.A., 695 F.2d 386 (9th Cir. 1982).

Similarly, in Glenside West, the district court held that

_____

[7] Our Court of Appeals, in Lewis v. Exxon Corp., 716 F.2d 1398 (D.C. Cir. 1983), cited this passage approvingly while addressing a different issue—whether a criminal conviction was grounds for termination under the PMPA where the defendant had been convicted in a trial court but had not yet exhausted his appeals.

Exxon properly terminated its franchise with a corporation based on the assault conviction of its sole shareholder. Although the court never addresses the issue head-on, it assumes that the sole shareholder's criminal activity was sufficient to constitute grounds for terminating the franchise even though it had been executed in the company's name. See Glenside West, 761 F. Supp. at 1129-30.

Plaintiff does not address Guerami, Humboldt Oil, or Glenside West. Instead, it relies on three additional cases for support, none of which is ultimately persuasive. As Defendant points out, two of Plaintiff's cases, Akparewa v. Amoco Oil Co., 771 A.2d 508 (Md. Spec. App. 2001), and Khan v. State Oil Co., 907 F. Supp. 1202 (N.D. Ill. 1995), stand for the relatively simple proposition that where a franchisee has executed an agreement in her individual capacity, but has also incorporated, only the individual has standing to sue for enforcement of the agreement.[8] See Opp'n at 12, n.5. Neither addresses the issue presented here: whether misdeeds by an individual can be grounds for terminating a franchise agreement executed in a corporation's name.

Comparatively stronger support for Plaintiff's position comes in another case from the Northern District of Illinois, Joy v. BP Prods. North America. See Joy v. BP Prods. North America, 332 F.

---

[8] Akparewa, in fact, addresses this question under Maryland law rather than the PMPA and is thus of almost no relevance here.

Supp. 2d 1084 (N.D. Ill. 2004). In that case, the court found that BP, the franchisor, could not terminate plaintiff's franchise based on the conviction of one of its employees for selling drugs at the station. See id. at 1086. The court reasoned that because the franchisee himself had no knowledge of the illegal activity at the station, the conviction did not constitute "an event relevant to the franchise relationship" under PMPA § 2802(b)(2)(C). Id. For BP to have used the conviction as grounds for termination, the court explained, "there [would have to be] some evidence of franchisee culpability and, on this record, that evidence is lacking." Id. at 1087.

The distinctions between the facts of Joy and the instant facts should be obvious and make that case easily distinguishable. In Joy, a low-level employee at the station was convicted of a crime totally unrelated to the sale of fuel and without the franchisee's knowledge, let alone consent. Here, by contrast, the illegal activity was conducted by the sole shareholder of Rising Micro and was directly related to the sale of Exxon fuel at his station. Where evidence of the franchisee's culpability was lacking in Joy, evidence of Rashid's culpability is clear.

For the foregoing reasons, the Court finds that Rashid's guilty plea was a permissible ground for Exxon Mobil to terminate the franchise pursuant to PMPA § 2802(c)(1).

-17-

**B.    Rashid's guilty plea was a relevant unenumerated event for which termination is proper pursuant to Section 2802(b)(2)(C)**

Even if Rashid is not considered a franchisee under the Act, Defendant also argues that his guilty plea was nevertheless a "relevant unenumerated event" for which termination is proper pursuant to PMPA § 2802(b)(2)(C). <u>See</u> Opp'n at 15-16. Exxon Mobil argues that Section 2802(c) sets out a list of "events" constituting grounds for termination under PMPA § 2802(b)(2)(C) that is illustrative but not exhaustive. Accordingly, even if Rashid's criminal activity is not deemed ground for termination under PMPA §§ 2802(c)(1), Defendant maintains that Rashid's guilty plea is nevertheless a relevant "unenumerated event" that makes termination proper in this case.[9]  <u>See</u> <u>id.</u>

Because the Court has already held that Exxon Mobil validly terminated the franchise pursuant to PMPA § 2802(c)(1), it is not necessary to address at length whether Section 2802(c) permits termination for reasons other than those specifically enumerated. It does appear, however, that the legislative history and case law support Defendant's position.

A congressional report accompanying the Act addresses this issue specifically. <u>See</u> S. Rep. No. 732, 95th Cong., 2d Sess. (1978). It explains that "the enumerated list [contained in

---

[9]  Because Plaintiff did not reply to Defendant's Opposition, it has offered no arguments on this issue.

Section 2802(c)] is intended to provide a measure of congressional intent with respect to the meaning of the statute" but that "a judicial determination may be made that an event similar but not identical to one enumerated . . . constitutes an event which is relevant to the franchise relationship as a result of which termination . . . is reasonable." <u>Id.</u> at 37.

The case law, too, supports this proposition. In <u>Glenside West</u>, for instance, where Exxon cited the assault conviction of the franchisee's sole shareholder as the reason for termination, the court found that whether or not that conviction was an "event" specifically described in Section 2802(c), the shareholder's conviction was nevertheless a "non-enumerated event under subsection 2802(b)(2)(C)." <u>Glenside West</u>, 761 F. Supp. at 1130. Likewise, in <u>Portaluppi v. Shell Oil Co.</u>, a case from the Eastern District of Virginia, the court found that even though the franchisee's conviction for cocaine possession did not satisfy one of the categories described in Section 2802(c), Shell properly terminated the franchise because the conviction was relevant to the franchise relationship. <u>See</u> <u>Portaluppi v. Shell Oil Co.</u>, 684 F. Supp. 900, 906 (E.D. Va. 1988) (noting that the list of "events" contained in Section 2802(c) is "merely illustrative, not exhaustive").

There can be no question that Rashid's use of an Exxon-branded gas station, including the credit card machines and other business

equipment housed therein, to conduct an elaborate fraud scheme was an event relevant to the franchise relationship.  To the extent PMPA § 2802(b)(2)(C) encompasses events that are similar but not identical to those specifically enumerated in Section 2802(c), therefore, Exxon Mobil was within its rights to terminate Rising Micro's franchise even if such termination does not satisfy the express terms of Section 2802(c)(1).

### 3.  Exxon Mobil is not equitably estopped from terminating Plaintiff's franchise

Plaintiff alleges that in May 2005, "at Exxon's insistence," it invested $95,000 to build a car wash at the station.  See P.I. Mot. at 4.  Because Exxon Mobil induced it to build the car wash after it allegedly learned of Rashid's criminal misconduct, Plaintiff contends, Exxon Mobil should be equitably estopped from using Rashid's plea as grounds for terminating the franchise.  See id. at 16.  In response, Exxon Mobil argues that this claim must fail for two reasons: first, because the PMPA preempts state law relating to the termination of franchises; and, second, because even assuming that an equitable estoppel claim can proceed, any such claim by Plaintiff fails as a matter of law.  See Opp'n at 20-21.

The question of whether the PMPA preempts state law, including a court's equitable powers, has not been addressed in this Circuit and appears to be somewhat unsettled elsewhere.  The PMPA provides that:

> to the extent that any provision of this title applies to
> the termination . . . of any franchise . . . no state or
> any political subdivision thereof may adopt, enforce, or
> continue in effect any provision of law or regulation
> with respect to termination . . . of any such franchise
> . . . unless such provision or regulation is the same as
> the applicable provision of this title.

PMPA § 2806(a)(1). Defendant points to a line of cases in which courts have found that this provision does preempt equitable remedies. See Opp'n at 20; see, e.g., Camina Services, Inc. v. Shell Oil Co., 816 F.Supp. 1533, 1537 (S.D. Fla. 1992) ("On its face [PMPA § 2806] preempts a state law claim for promissory estoppel 'with respect to termination.'"); Glenside West, 761 F. Supp. 1100, 1108 (D. N.J. 1991) (explaining that PMPA § 2806 "preempts both statutory and common law involving wrongful franchise terminations").

Plaintiff, on the other hand, points to Filiaga v. Chevron U.S.A. Inc., an unpublished opinion by the Tenth Circuit.[10] See Filiaga v. Chevron U.S.A. Inc., No. 89-4098, Mem. Op. (10th Cir. 1990). There, the court reversed a district court holding that the PMPA barred equitable estoppel claims. Citing the Senate Report accompanying the PMPA, the appellate panel explained that because one of the statute's primary purposes was to protect the "reasonable expectations" of franchisees, and because a court's

---

[10]    Filiaga appears to be inconsistent with the majority of cases that have addressed this issue. Moreover, the Tenth Circuit's Local Rules provide that "citation of an unpublished decision is disfavored." The Court therefore gives it little weight. See 10th Cir. R. 36.3(B).

equity powers are often the best tool to protect such expectations, it "would be anonmalous . . . to interpret the statute as preempting equitable protection." Id. at 5.

The Court need not decide whether Section 2806 preempts its equitable powers, however, because even assuming that an equitable estoppel claim could proceed here, it would be impossible for Plaintiff to succeed on it. Under District of Columbia law, the elements of equitable estoppel are: "(1) conduct amounting to a false representation or concealment of material fact (2) made with actual or constructive knowledge of the true facts, and (3) with the intention that another person act in reliance upon it; (4) the other person's lack of knowledge and of the means of knowledge concerning the truth of the representation, (5) and his reliance upon the misrepresentation, (6) causing him to act so as to change his position prejudicially." Cassidy v. Owen, 533 A.2d 253, 255 (D.C.1987).

Applying these principles to the instant facts, it is clear that Rising Micro's claim must fail for at least three reasons. First, it has presented no reliable evidence that Exxon Mobil knew of Rashid's criminal activity prior to renewing the franchise in October 2003, let alone that it concealed an intention to terminate the franchise in hopes of inducing Rashid to invest in a new car

wash.[11]  Second, while the lease <u>authorizes</u> Rising Micro to operate a car wash on the premises, it does not <u>require</u> him to do so.  <u>See</u> Bednash Decl., Ex. 1, Art. I § 1.2(b) (2004-2007 franchise agreement).  Third, regardless of whether Exxon Mobil knew of his criminal activities, Rashid certainly did at all relevant times. If nothing else, then, the doctrine of unclean hands would preclude him from claiming equitable estoppel.

### 4.  Plaintiff has not produced sufficient evidence that Exxon Mobil's reasons are pretextual

In its final argument, which appears only in a footnote, Plaintiff claims that a preliminary injunction should issue so that it can investigate more fully the question of whether Exxon Mobil's rationale for terminating the lease was pretextual.  <u>See</u> P.I. Mot. at 13 n.5.  Specifically, Rising Micro contends that Exxon Mobil terminated the lease in March 2006 not because of Rashid's plea but because Major League Baseball had finally signed a lease to build a new stadium on the same block as the station and thus the property's value was set to increase dramatically.  <u>See</u> <u>id.</u>  In so doing, it violated what Plaintiff contends is an implicit requirement of PMPA § 2802(b)(2)(C) that the franchisor act in good

---

[11]  In fact, Plaintiff's only evidence that Exxon Mobil knew of possible criminal activity at the station before January 2006 is the unsubstantiated and contested allegation that a company representative was present during the February 2004 search, which occurred three months after the parties executed the 2004-2007 franchise agreement.

faith.

Defendant contends that the PMPA does not impose a general duty to act in good faith, and therefore that unless termination has been proposed under a section of the Act that contains an express good-faith requirement, which Section 2802(b)(2)(C) does not, any evidence of pretext is irrelevant. See Opp'n at 21-22.

Courts disagree over the question of whether there is, as Plaintiff argues, a general good-faith duty under the PMPA. In Reyes v. Atlantic Richfield Co., a case Plaintiff cites for support, the Ninth Circuit concludes that it does. See Reyes v. Atlantic Richfield Co., 12 F.3d 1464 (9th Cir. 1993). There, the court explains that whenever a franchisor attempts to terminate a franchise, it bears the burden of establishing two elements. First, it must show that termination is warranted on one of the grounds set forth in PMPA § 2802. See PMPA § 2805(c). Second, it must show that the termination is in fact "based upon a ground" described in PMPA 2802(b)(2). Id. at 1469 (quoting PMPA § 2802(b)(1)(B)).

It is in this second requirement that the Reyes Court reads an implicit good faith requirement into the Act: if a franchisee has reason to believe that the termination was not "based upon a ground" described in the Act, the Court concludes that Section 2802(b)(1)(B) permits evidence that the stated reasons were in fact pretextual, regardless of whether the provision under which

termination was proposed includes an express good-faith requirement. Id.

As Defendant points out, however, there is a well-developed line of cases supporting the opposite proposition: that unless termination proceeds under a section of the Act that expressly requires good faith, any evidence of pretext is irrelevant. See Opp'n at 21-22. In Smoot v. Mobil Oil Corp., for instance, the court reasons that "the language of the PMPA demonstrates that Congress was aware that it might be desirable to impose a duty of good faith in certain areas and knew how to require it expressly . . . when appropriate." Smoot v. Mobil Oil Corp., 722 F. Supp. 849, 857 (D. Mass. 1989). But,

> where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely [sic] in the disparate inclusion or exclusion. . . [I]n this case, the court may not properly imply a duty of good faith in addition to the express requirements of § 2802(b)(2).

Id. According to Exxon Mobil, the Smoot Court's reasoning should apply here as well. Because PMPA § 2802(b)(2)(C) does not include an express good-faith provision, Exxon Mobil argues, its motivation is irrelevant and Rising Micro is not entitled to introduce evidence of pretext. See Opp'n at 22.

The Court need not decide whether the reasoning of Reyes or Smoot is more persuasive on this issue, however. Assuming that evidence of pretext can be introduced in these circumstances, which

appears to be a question of first impression in this jurisdiction, Rising Micro has not satisfied its burden at this stage of the proceedings.

Apart from its bare assertion, based on sheer speculation, that Exxon Mobil's stated reason for terminating the franchise is not the actual reason, Plaintiff has not produced a shred of evidence supporting this claim. There is no declaration, affidavit, or exhibit attached to Rising Micro's pleadings supporting its pretext argument.[12] In this posture, the Court cannot find that whether Exxon Mobil gave a pretextual reason for terminating Plaintiff's franchise presents a "serious question" that is a "fair ground for litigation." Even under the PMPA's lenient standard, therefore, Plaintiff's unsupported allegations cannot suffice to justify preliminary injunctive relief.

**B.    The Balance of Hardships Favors Exxon Mobil in This Case**

As discussed <u>supra</u>, in addition to showing that there exist serious questions creating a fair ground for litigation, a franchisee seeking preliminary injunctive relief under the PMPA must also show that the hardship a preliminary injunction would place on the franchisor "will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive

---

[12]    At the May 1, 2006 Motions Hearing, Plaintiff could not point to any supporting evidence whatsoever. Instead, it could only argue that such evidence might turn up in the course of discovery.

relief were not granted." See 15 U.S.C. § 2805(b)(1)-(2).

Because the PMPA generally involves litigation between small businesses on the one hand and giant, multinational corporations on the other, as is the case here, it is rarely difficult for the franchisee to show that it will suffer the greater hardship if a preliminary injunction is denied. See Khourenian, 761 F.2d at 535. Nevertheless, the disparity in size and resources between the two parties is not the only relevant consideration for the Court.

In this case, while the denial of preliminary injunctive relief will work a severe financial hardship on Rising Micro, and may threaten its very existence,[13] granting such relief will impose hardships on Exxon Mobil that are significant. Specifically, Exxon Mobil will be forced to maintain a business relationship with a man who has admitted using the Exxon-branded station he controls to defraud the District government out of over $100,000. Exxon Mobil, which has stated that when deciding whether to enter into a franchise agreement, it places great weight on the "personal qualifications" and "core values" of the "Key Individual" who will operate it, understandably represents that it "no longer trusts Rashid to own/operate" one of its stations. See Opp'n at 4, 23. Furthermore, Exxon Mobil argues that continuing to do business with

_____

[13] The Court notes, however, that Plaintiff has produced no evidence—in the form of a balance sheet or other financial data—of the likely impact denial of preliminary injunctive relief will have.

an admitted criminal like Rashid is against its interests and against those of the public at large. Id. at 23.

On these facts, the Court must conclude that this is the rare case where the balance of hardships favors the franchisor, Exxon Mobil. Granting preliminary injunctive relief would force the company to allow a franchisee that is wholly owned and operated by a man who has committed serious, felony crimes against the public to continue operating. While the PMPA is certainly designed to protect franchisees against arbitrary and unjust treatment by franchisors, nothing in the legislative history or case law suggests that an individual like Rashid can avail himself of its protections in the face of an otherwise reasonable termination.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction Judgment [Dkt. No. 37] is **denied.**

An Order will issue with this Memorandum Opinion.


                                        /s/
May 3, 2006                             Gladys Kessler
                                        U.S. District Judge


<u>**Copies to**</u>: **attorneys on record via ECF**